**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | |
|---|---|
| Cameron Arnegard and<br>Mary S. Arnegard,<br><br>      Plaintiffs,<br><br>vs.<br><br>Marcy Feilmeier, McKenzie<br>County FSA; Gary J. Nelson,<br>North Dakota State FSA; and<br>the Farm Service Agency,<br><br>      Defendants. | **ORDER DENYING PLAINTIFFS'<br>MOTION FOR SUMMARY JUDGMENT<br>AND GRANTING DEFENDANTS'<br>MOTION FOR SUMMARY JUDGMENT**<br><br>Case No: 4:08-cv-083 |

Before the Court is the Plaintiffs' motion for summary judgment filed on January 26, 2009 and the Defendants' motion for summary judgment filed on March 12, 2009. See Docket Nos. 20 and 27. The Defendants filed a response to the Plaintiffs' motion on March 12, 2009, and the Plaintiffs filed a response to the Defendants' motion on March 20, 2009. See Docket Nos. 29 and 31. The Court denies the Plaintiffs' motion for summary judgment and grants the Defendants' motion for summary judgment for the reasons set forth below.

**I.    BACKGROUND**

The plaintiffs, Cameron Arnegard and Mary S. Arnegard, are farmers operating in McKenzie County, North Dakota. On August 23, 2007, the Plaintiffs received a farm-stored marketing assistance loan, known as Loan 6, in the amount of $29,678 from the Commodity Credit Corporation (CCC), a federal corporation within the Department of Agriculture. See Docket No. 30, p. 137. As required by Loan 6's terms, the Plaintiffs gave the CCC a security interest in 10,450 bushels of

durum wheat, certifying that there were 4,950 bushels stored in Bin 13 and 5,500 bushels stored in Bin 19 on the Plaintiffs' farm.  See Docket No. 30, p. 136.

The marketing assistance loan program is administered under the general supervision of the CCC and carried out in the field by the Farm Service Agency (FSA).  The loans allow a producer growing eligible crops to store production and use loan proceeds to meet cash flow needs without selling the crop.  See Docket No. 30, p. 53.  Producers pledge the crop as collateral and have the option of delivering the pledged commodity to the CCC as full settlement of the loan at maturity.  See Docket No. 30, p. 53.  For a farm-stored marketing assistance loan, the producer/borrower may either ask the CCC to measure the quantity or certify on the loan application the quantity that is being pledged and specify the structure(s) in which it is being stored.  County officers make onsite spot checks of outstanding farm-stored loans on a random basis.  See Docket No. 30, p. 53.

On September 9, 2007, a field inspector for FSA conducted a spot check of the Plaintiffs' durum wheat.  See Docket No. 30, p. 163.  The results of the spot check revealed that Bins 13 and 19 were short 2,066 bushels.  See Docket No. 30, p. 163.  Since the difference was more than allowed, the Plaintiffs were considered to have violated the terms of their loan and security agreement.  The FSA notified the Plaintiffs by letter dated September 13, 2007 of the shortage, violation, and action that the FSA could take in response to the violation.  See Docket No. 3-3.  The Plaintiffs requested a re-measurement of the wheat.  See Docket No. 3-4.  On October 4, 2007, the same FSA field inspector conducted a re-measurement.  The results showed no change in the wheat levels in Bin 13 but nearly a 3,000-bushel increase in Bin 19.  See Docket No. 3-4.  The total bushels in both bins was now above the quantity certified.  The FSA field inspector also observed a grain auger off to the side of the bin and noted that a peak of grain was present in Bin 19 at the time of the

re-measurement, but the grain was level at the time of the initial spot check.  See Docket Nos. 3-4 and 30, p. 6.

On October 9, 2007, the Plaintiffs repaid Loan 6 in full.  On October 17, 2007, the FSA County Committee determined the shortage on Loan 6 to be an incorrect certification and action not in good faith, assessed liquidated damages in the amount of $586.74, and denied future farm-stored loans and loan deficiency payments (LDPs) without production evidence for 24 months.  See Docket No. 30, p. 128.  After the Plaintiffs' appeal to the FSA County Committee was denied, the Plaintiffs appealed the FSA County Committee's determination to the North Dakota State FSA Committee.  On January 14, 2008, the North Dakota State FSA Committee denied the Plaintiffs' appeal.  On February 4, 2008, the Plaintiffs then appealed the North Dakota State FSA Committee decision to the National Appeals Division (NAD).  A hearing was conducted by the NAD on April 3, 2008.  On May 20, 2008, the NAD Hearing Officer held that the FSA decision was not erroneous.  See Docket No. 30, p. 59.  The Plaintiffs subsequently requested a Director Review on June 9, 2008.  On August 26, 2008, the Director Review upheld the NAD Hearing Officer determination.  See Docket No. 30, p. 84.

The Plaintiffs contend that they did not violate the terms and conditions of Loan 6, and that they made a good faith estimate of the grain in the bins securing the loans.  The Defendants contend that substantial evidence supports the agency's finding that the Plaintiffs violated the terms and conditions of Loan 6 since the Plaintiffs incorrectly certified the quantity of grain stored in Bin 19.  The Defendants further contend that the agency's assessment of liquidated damages and penalties is supported by substantial evidence.

## II.   STANDARD OF REVIEW

Judicial review of a National Appeals Division (NAD) hearing officer's decision is governed by the Administrative Procedure Act (APA), 5 U.S.C. § 701 et seq. A review is limited to a determination of whether the NAD hearing officer's determination was "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' and should be set aside pursuant to the Administrative Procedure Act." Clason v. Johanns, 438 F.3d 868, 870-71 (8th Cir. 2006) (quoting 5 U.S.C. § 706(2)(A)). "This narrow review entails a 'searching and careful' de novo review of the administrative record presented to determine 'whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" Downer v. United States, 97 F.3d 999, 1002 (8th Cir. 1996) (quoting Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 378 (1989)).

> To perform this review the court looks to whether the agency considered those factors Congress intended it to consider; whether the agency considered factors Congress did not intend it to consider; whether the agency failed entirely to consider an important aspect of the problem; whether the agency decision runs counter to the evidence before it; or whether there is such a lack of a rational connection between the facts found and the decision made that the disputed decision cannot "be ascribed to a difference in view or the product of agency expertise."

Downer, 97 F.3d at 1002 (quoting Motor Vehicle Manufacturers Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). This court may not supply a reasoned basis for the agency's action if the agency provided one. Id.

It is well-established that a reviewing court may not substitute its judgment for that of the agency, and the court must give substantial deference to an agency's determination. Id. "This deference is particularly appropriate when the agency determination in issue concerns a subject within the agency's own area of expertise." Downer, 97 F.3d at 1002 (citing Marsh, 490 U.S. at 377-78).

> An agency making fact-based determinations in its own field of expertise, particularly where those determinations are wrapped up with scientific judgments, must be permitted "to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive."

Downer, 97 F.3d at 1002 (quoting Marsh, 490 U.S. at 378). "Because of the NAD's expertise and the extensive administrative review afforded" to the Plaintiffs, this Court "will afford the NAD's interpretation the same level of deference afforded to an agency's interpretation of its own regulations." Clason v. Johanns, 438 F.3d 868, 871 (8th Cir. 2006).

### III.  LEGAL DISCUSSION

The Plaintiffs essentially contend that the FSA acted arbitrarily and capriciously and abused its discretion when it: 1) concluded that the Plaintiffs violated the terms and conditions of Loan 6 by incorrectly certifying the quantity of grain and 2) assessed liquidated damages and penalties and denied future farm-stored loans and loan deficiency payments (LDP's) without production evidence for 24-months.

#### A.  VIOLATION OF TERMS AND CONDITIONS OF LOAN

The administrative record establishes that the agency considered the factors Congress intended it to consider and no evidence has been presented that the agency considered factors that Congress did not intend it to consider. The producer of a commodity (durum wheat) that is pledged as security for a farm-storage loan must either certify the quantity of such commodity on the loan application or have the quantity measured by the Commodity Credit Corporation (CCC). 7 C.F.R. § 1421.105(a). Upon obtaining a commodity marketing assistance loan, the producer agrees, in writing, not to "[p]rovide an incorrect certification of the quantity or make any fraudulent or

5

erroneous representation for the marketing assistance loan." 7 C.F.R. § 1421.109(a)(1). Substituted commodities are "ineligible to be pledged as collateral for a marketing assistance loan." 7 C.F.R. §§ 1421.5(f) and 1421.105(c). In this case, the agency noted that the Plaintiffs certified the quantity of grain on the loan application instead of having it measured by the CCC before receiving Loan 6, and that the Plaintiffs provided an incorrect certification of the quantity. The FSA determined that by adding grain to the bin, the Plaintiffs made a substitution, which is not allowed under the marketing assistance loan program.

The agency did not fail entirely to consider an important aspect of the problem, the agency's decision does not run counter to the evidence before it, and there is a rational connection between the facts found and the NAD decision. While the Plaintiffs contend that the FSA field inspector measured the grain incorrectly on the initial spot check, the FSA did determine that grain was added to the bin. See Docket No. 30, p. 57. The agency's measurement determination is within its field of expertise. See Frank's Livestock & Poultry Farm, Inc. v. United States, 17 Cl. Ct. 601 (1989) (finding that questions as to loan settlement ability are within the agency's expertise). The FSA considered several factors in concluding that grain was added to the bin, including the almost 3,000 bushel difference between the two measurements, the existence of the grain peak in the re-measurement but the lack of a peak in the initial measurement, and the grain auger near the bins. See Docket No. 30, p. 57. The agency also addressed the Plaintiffs' contentions in detail. See Docket No. 30, p. 53-59.

The record reveals that the agency provided a reasoned basis for determining that the Plaintiffs were in violation of the terms and conditions of the marketing assistance loan. Therefore, this Court may not supply one and may not substitute its judgment for that of the agency. See

Downer v. United States, 97 F.3d 999, 1002 (8th Cir. 1996) (citing Motor Vehicle Manufacturers Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)).

### B.  LIQUIDATED DAMAGES, PENALTIES, AND FUTURE LOANS

Upon determining that the producer did not act in good faith, the FSA County Committee assesses liquidated damages at 10-percent of the marketing assistance loan rate for the quantity in violation. 7 C.F.R. §§ 1421.109(c), (d), and (f)(2). Consistent with these regulations, the CCC Commodity Loan Handbook establishes that in determining whether the producer acted in good faith, one of the following must apply:

- there is evidence to support that the producer made every effort to comply with the terms and conditions of CCC-601 and CCC's security interest was protected

- the violation was inadvertent, accidental, or unintentional

- the actions that resulted in a violation prevented the spoilage of the commodity or was necessary to protect CCC's security interest in the commodity.

See Docket No. 30, p. 112.

The CCC Commodity Loan Handbook states that the county office shall maintain a list of producers who the FSA County Committee determines committed a violation not within the tolerance level and keep a producer's name on the list for 24 months. See Docket No. 30, p. 106. The list is "a method of determining whether the producer has had previous violations" and is "not considered an administrative action." See Docket No. 30, p. 106.

The Plaintiffs do not contend that the agency incorrectly calculated the liquidated damages and penalties amounts. The agency provided a reasoned basis for determining that the Plaintiffs did

not act in good faith.  The FSA considered the evidence that grain was added to Bin 19 after the initial spot check measurement, and that this was the Plaintiffs' second violation in twenty-four months.  See Docket No. 30, p. 52.  The Plaintiffs contend that they had sufficient amounts of grain in other bins, secured by other CCC loans, to protect CCC's security interest.  See Docket no. 21.  However, this fact is irrelevant in determining the amount in the bins listed in Loan 6 because substituted commodities are not allowed.  7 C.F.R. §§ 1421.5(f) and 1421.105(c).

### IV.   CONCLUSION

For the reasons set forth above, the Court finds that the agency's determination is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  Accordingly, the Court **DENIES** the Plaintiffs' motion for summary judgment (Docket No. 20) and **GRANTS** the Defendants' motion for summary judgment (Docket No. 27).

**IT IS SO ORDERED.**

Dated this 19th day of August, 2009.

> */s/ Daniel L. Hovland*
> Daniel L. Hovland, Chief Judge
> United States District Court